FRANCISCO MÚJICA DUEÑO, Plaintiff and Appellant, v. RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8507. Argued March 16, 1943.—Decided May 18, 1943.

J. J. Ortiz Alibrán for appellant. M. Rodríguez Ramos, Acting Attorney General, and M. Velázquez Flores, Deputy Attorney General, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action to recover taxes paid under protest, prosecuted and decided according to the law in force before the creation of the Court of Tax Appeals. The constitutionality of §§12 and 13 of Act No. 74 of 1925 (Laws of 1925, p. 400), known as the Income Tax Act of 1924, is involved, as well as the question of whether a certain sum deposited in a bank that could not be collected during the tax year, as said bank was placed in that year in receivership, can be deducted as a total loss for the purpose of computing the income tax for that year.

The complaint alleges four causes of action. The defendant demurred and answered. Afterwards, both parties reached an agreement and submitted to the court a stipulation on the facts and the rights to be considered and adjudicated.

There are involved deficiencies in the income tax returns of the taxpayer plaintiff for the years 1930, 1931, 1932, and 1933, notified to him by the Treasurer defendant, in the amounts of $5,409.19, $8,154.65, $2,386.87, and $591.80, respectively.

Feeling aggrieved, the taxpayer appealed to the Board of Review and Equalization. The Board reduced the amounts claimed as follows: that of 1930, to $1,662.75; that of 1931, to $2,485.76; that of 1932, to $58.74; and that of 1933, to $40.60.

The taxpayer paid the last sums under protest, and filed this action in the District Court of San Juan, claiming the reimbursement of the sums paid because the law on which the collection was based—Act No. 74 of 1925, §§12 and 13—was unconstitutional as it is discriminatory and contrary to the uniformity rule established by §2, paragraph 22, of the Organic Act, and besides as to the tax corresponding to the year 1931, because the Treasurer refused to take into consideration the loss of $16,532.72 claimed by the taxpayer for the reason that Banco Comercial de Puerto Rico had gone out of business and had been placed under receivership.

The stipulation to which we have already referred was submitted to the court on May 31, 1939, and the case was decided on January 2, 1942, by judgment dismissing the complaint. It was from said judgment that the taxpayer took the present appeal, imputing to the lower court the commission of the following two errors:

"First error: In holding that the $16,532.72 item, frozen in the Banco Comercial de Puerto Rico at the close of its operations in 1931, was not deductible from the gross income of the plaintiff during that year.

"Second error: In holding that the Income Tax Act, No. 74 of 1925, is constitutional as far as it establishes by §§12 and 13, progressive tax rates and that therefore said taxes are uniform."

It seems logical to start our study by the second assign-ment of error, as it refers to the whole of the taxes claimed. ■ We shall not pause long to consider it. Let it suf-fice to say that the holding of this court in the recent case of *Ballester* v. *Court of Tax Appeals*, 61 P.R.R. 460, decides the point in controversy against the appellant, to quote from the syllabus, thus:

"As regards the progressive tax rates therein, the Income Tax Act provides only for higher rates at higher income levels but not different rates of taxation at different places in Puerto Rico. Hence, such rates are not violative of the uniformity clause of our Organic Act."

The action is thus reduced to the claim of the tax corre-sponding to the year 1931—$2,485.76.

■■ The facts relating to this point, as accepted by the parties, are:

"Plaintiff alleges that the tax deficiency for 1931, mentioned above, originated from the fact that the defendant amended his reported net income by increasing it in the amount of $23,358.92 rejecting said item as a deduction and which corresponds to the following:

"(a) Loss by reason of the closing of Banco Comercial de Puerto Rico, placed under receivership in the year 1931, when the plaintiff considered this account totally lost, $16,532.72.

"     *     *     *     *     *     *     *

"Banco Comercial de Puerto Rico is, and was on the dates to which this case refers, a banking institution operating according to the laws of Puerto Rico, with its principal office in San Juan and branches in various towns of the Island. Said bank was placed under receivership in October 1931, according to ruling entered by the District Court of San Juan on the 19th of said month and year. On this date the bank closed its doors, and suspended all its regular operations, plaintiff not being able to withdraw his funds in the savings account to the amount of $22,043.63, from the time of the

closing to December 31, 1931. Defendant considerd as a loss only 25% of said sum, that is, $5,510.91, rejecting the difference which amounted to $16,532.72. In spite of his efforts, plaintiff could not withdraw from the bank any part of the $22,043.63 during the period of time which ended on December 31, 1931. Afterwards, the defendant (sic) has received the following sums from his deposit of $22,043.63: On July 3, 1933, $5,276.47; on August 15, 1933, $7,091; on April 2, 1934, $752.15; on August 15, 1934, $714.54; on August 5, 1935, $678.81; on May 2, 1936, $644.87; on September 1936, $612.63; on October 10, 1938, $582. Total, $10,052.47.

"The receiver having been appointed in said year of 1931, the bank remained closed on December 31 of said year, it being impossible to determine on what date 'it would again be opened to the public nor what portion of his deposit plaintiff would receive in the future. The assets of the bank on the date on which the receiver was appointed were greater than its liabilities, but of slow liquidation, and at the time the bank lacked the necessary cash to cover the obligations immediately due, for which reason it was placed under receivership to avoid a multiplicity of court actions and attachments of its properties which would bring as a consequence the depreciation of its assets to the detriment of its depositors and creditors.

"        *        *        *        *        *        *        *

"Even though plaintiff accepts as true the facts stated in paragraph 8 of the allegations of fact stated in the present stipulation, he alleges, nevertheless, that said facts have no pertinency whatsoever with reference to the situation in which the Banco Comercial found itself on December 31, 1931."

The law applicable is subdivision 7, §16 of the Income Tax Act (Laws of 1925, pp. 438, 442), which reads as follows:

"Section 16.—(a) In computing net income there shall be allowed as deductions:

"        *        *        *        *        *        *        *

"(7) Debts judged to be worthless and charged off within the taxable year (or, in the discretion of the Treasurer, a reasonable sum as a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Treasurer may allow such debt to be charged off in part."

And appellant maintains that, according to the same, he had the right to deduct, as he did from his income for the

year 1931, the amount he had on deposit in Banco Comercial de Puerto Rico, which he could not withdraw due to the fact that said bank was placed under receivership, and which he considered uncollectible, and he cites various cases in support of his contention, among which, as the "most properly applicable," is the decision of this court in *Soto* v. *Domenech, Treasurer,* 45 P.R.R. 267. According to appellant, the taxpayer's judgment is decisive unless it is wholly without basis.

We do not agree. The very case he cites—*Soto* v. *Domenech, Treasurer, supra*—is contrary to his contention, as in the same, although it was decided by virtue of the concurrent circumstances in favor of the taxpayers, this court was very careful to say, "The parties have not exhausted the jurisprudence, and the citation of authorities by the court does not entirely satisfy us. One of them, for example, *Avery* v. *Commissioner of Internal Revenue,* 22 F. (2d) 536, 55 A.L.R. 1277, refers rather than to anything else, to the year in which a bad debt can be deducted. It does not decide, and the law seems to be to the contrary, that the opinion of the taxpayer is to be taken as final. Unquestionably, in the absence of other evidence, the position taken by the taxpayer should have some weight, but the Treasurer of Puerto Rico is not necessarily bound thereby." *Soto* v. *Domenech, Treasurer,* 45 P.R.R. 267, 268.

According to the very provisions of the law, it is the Treasurer who has the last word to say, not to pronounce it arbitrarily, of course, but, taking into consideration all the concurrent circumstances and harmonizing the interests of the taxpayer with those of the public treasury, in the exercise of his discretion to decide the question fairly.

Did he do it so in this case? The evidence shows that he not only did not abuse his discretionary power, but that he used it properly when he refused to eliminate the whole of the debit, allowing only a partial elimination—one-fourth—of the same for the year in which the bank discontinued its

normal operations due to having been placed under receivership. At that time the assets of the bank exceeded its liabilities, and although it is a fact that the taxpayer could not withdraw everything he had in the bank in 1931, there was reason to believe that he could do so in the future, as has been demonstrated by subsequent events. At the time the stipulation was signed, May 1939, the taxpayer had already been able to withdraw $10,052.47.

The interpretation we have given to the Puerto Rican act is in accordance with that given to the Federal act on that same question by the national courts, including the Supreme Court.

Both acts differ only in that in the Federal act the word "ascertained" is used instead of the word "judged" used in the Insular act. We believe, with the lower court, that the difference is not a substantial one, and therefore that the federal jurisprudence interpretative of said legal precept is of application in Puerto Rico.

Various are the decisions we could cite, but we consider it sufficient to refer to that of the Federal Supreme Court in *Spring City Co.* v. *Commissioner,* 292 U.S. 182, 185. The opinion of the Court was delivered by its then Chief Justice Mr. Hughes. In its pertinent part it states:

"Section 234 (a)—(5) of the Revenue Act of 1918 provided for the deduction of worthless debts, in computing net income, as follows: 'Debts ascertained to be worthless and charged off within the taxable year.' Under this provision, the taxpayer could not establish a right to the deduction simply by charging off the debt. It must be ascertained to be worthless within the taxable year. In this instance, in 1920, the debt was in suspense by reason of the bankruptcy of the debtor but it was not a total loss. What eventually might be recovered upon it was uncertain, but recovery to some extent was reasonably to be expected. The receiver continued the business and substantial amounts were subsequently realized for the creditors. In this view, the Board of Tax Appeals decided that the petitioner did not sustain a loss in 1920 'equal to the total amount of the debt' and hence that the entire debt was not deductible in that year.

"The question, then, is whether petitioner, was entitled to a deduction in 1920 for the portion of the debt which ultimately—on the winding up in bankruptcy—proved to be uncollectible. Such a deduction of a part of the debt, the Government contends and the Circuit Court of Appeals held, the Act of 1918 did not authorize. The Government points to the literal meaning of the words of the statute, to the established administrative construction, and to the action of the Congress in recognition of that construction. 'Worthless,' says the Government, means destitute of worth, of no value or use. This was the interpretation of the statute by the Treasury Department. Article 151 of Regulations 45 (made applicable to corporations by Article 561) provided that 'An account merely written down' is not deductible. To the same effect was the corresponding provision of the regulations under the Revenue Act of 1916.

"The right to charge off and deduct a *portion* of a debt where during the taxable year the debt was found to be recoverable only in part, was granted by the Act of 1921. By that Act, §234(a) (5) was changed so as to read: 'Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in, part.' We think that the fair import of this provision, as contrasted with the earlier one, is that the Congress, recognizing the significance of the existing provision and its appropriate construction by the Treasury Department, deliberately intended a change in the law. *Shwab* v. *Doyle,* 258 U.S. 529, 536; *Russell* v. *United States,* 278 U.S. 181, 188.

"This intent is shown clearly by the statement in the report of the Committee on Ways and Means of the House of Representatives in relation to the new provision. The Committee said explicitly— 'Under the present law worthless debts are deductible in full or not at all.' While the change was struck out by the Finance Committee of the Senate, the provision was restored on the floor of the Senate and became a law as proposed by the House. Regulations 62 issued by the Treasury Department under the Act of 1921 made a corresponding change in Article 151. The Treasury Department consistently adhered to the former rule in dealing with deductions sought under the Act of 1918.

"In numerous decisions the Board of Tax Appeals has taken the same view of the provision of the Act of 1918. See *e. g.,* Appeal of *Steele Cotton Mill Co.,* 1 B.T.A. 299, 302; *Western Casket Co.*

v. *Commissioner*, 12 B.T.A. 792, 797; *Toccoa Furniture Co.* v. *Commissioner*, 12 B.T.A. 804, 805. The contrary result in the instant case was reached in deference to the opinions expressed by the Circuit Court of Appeals of the Second Circuit in *Sherman & Bryan, Inc.* v. *Commissioner*, 35 F. (2d) 713, 716, and by the Court of Appeals of the District of Columbia in *Davidson Grocery Co.* v. *Lucas*, 59 App. D.C. 176; 37 F. (2d) 806, 808,—views which are opposed to those of the Circuit Courts of Appeals of the Eighth Circuit in *Minnehaha National Bank* v. *Commissioner*, 28 F. (2d) 763, 764, and on the Fifth Circuit in *Collin County National Bank* v. *Commissioner*, 48 F. (2d) 207, 208.

"We are of opinion that §234(a) (5) of the Act of 1918 authorized only the deduction of a debt ascertained to be worthless and charged off within the taxable year; that it did not authorize the deduction of a debt which was not then ascertained to be worthless but was recoverable in part, the amount that was not recoverable being still uncertain. Here, in 1923, on the winding up, the debt that then remained unpaid, after deducting the dividends received, was ascertained to be worthless and the Commissioner allowed deduction accordingly in that year."

Nor was the second of the assigned errors committed. Twenty-five per cent of the debit was eliminated. About fifty per cent of it was subsequently collected. Nothing appears about the final liquidation of the bank. Everything was done according to the law and the jurisprudence. No right has been violated or ignored. The taxpayer is entitled to deduct the uncollectible balance—if any—when the bank finishes its liquidation, in the year of the liquidation, which will be the year in which the loss will be a reality.

The action of the Treasurer was therefore correct, and consequently the appeal must be denied and the judgment appealed from affirmed.